UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF LOUISIANA

UNITED STATES OF AMERICA                    CIVIL ACTION

VERSUS                                      NO: 13-4722

0.648 ACRES OF LAND, MORE OR                SECTION: J
LESS, SITUATED IN PARISH OF
PLAQUEMINES, STATE OF
LOUISIANA and
WALTER DAN THOMPSON, JR.

                         **ORDER AND REASONS**

   Before the Court is the government's *Motion to Exclude Testimony Which Violates the Unit Rule and Seeks Non-Compensable Damages* **(Rec. Doc. 25)**, Defendant Thompson's *Opposition* **(Rec. Doc. 28)**, the government's *Reply* **(Rec. Doc. 34)**, and Thompson's *Sur-reply* **(Rec. Doc. 38)**. Having considered the motion, the parties' submissions, the record, and the applicable law, the Court finds, for the reasons expressed below, that the motion should be **GRANTED.**

                  **PROCEDURAL AND FACTUAL BACKGROUND**

   Walter Dan Thompson, Jr. ("Thompson") was the owner of a 1.014 acre tract of unencumbered land located on the north side of Highway 11 and the south side of the Mississippi River in Buras, Louisiana, located in Plaquemines Parish. There is a residence on the property, which is in poor condition due to damage from Hurricane Katrina. After the hurricane, the Corps of Engineers set out to repair the levee that runs between Thompson's property and

                                 1

the river. To perform the repairs, the Corps determined that it was necessary to acquire an easement over 0.648 acres of Thompson's property, and the government filed this action to acquire that easement. This left Thompson a remaining tract of 0.366 unencumbered acres.

According to Thompson, the easement has deprived him of the entirety of his river frontage and extends from the levee all the way to Thompson's residence. There were four mature live oak trees that closely surrounded the residence but were located on the taken portion of the property. The Corps removed these trees, and Thompson claims that because the trees were located close to the residence, they comprised a significant portion of the value of his remaining property. Thompson seeks recovery for the diminution in value of the remaining tract due to the removal of the four oak trees.

Thompson has provided two expert reports. The first is an appraisal of the market value of the property, both before and after the taking, by S. Parkerson McEnery and Matthew B. Elder ("the McEnery report"). The second is a report by James L. Culpepper, a consulting arborist, who performed an appraisal of the four live oak trees that the Corps removed ("the Culpepper report").

The McEnery report states that the total compensation owed to Thompson is $26,000, which includes $15,422 in compensation for the

2

taken tract and $10,578 for the diminution in value of the remaining tract. (Rec. Doc. 25-3, p. 6). The McEnery report employs the "Sales Comparison Approach," which makes a direct comparison to the sale prices of similar properties, to assess the market value of the total 1.014 acre parent tract. (Rec. Doc. 25-3, p. 40).[1] Using this approach, the report finds that the value of the total parent tract before the taking was $68,000; the value of the taken tract is $15,422;[2] the value of the remaining tract before the taking was $52,578; the value of the remaining tract after the taking is $42,000; and the diminution in value of the remaining tract is therefore $10,578. (Rec. Doc. 25-3, p. 122). The report notes that because the value of the parent tract before the taking was $68,000, and the value of the remaining tract after the taking is $42,000, this yields a difference of $26,000 that the government owes to Thompson. (Rec. Doc. 25-3, p. 122).

With respect to the diminution of the value of the remaining

---

[1] The report defines "market value" as:

> ... the amount in cash, or on terms reasonably equivalent to cash, for which in all probability the property would have sold on the effective date of the appraisal, after a reasonable exposure time on the open competitive market, from a willing and reasonably knowledgeable seller to a willing and reasonably knowledgeable buyer, with neither acting under any compulsion to buy or sell, giving due consideration to all available economic uses of the property at the time of the appraisal.

(Rec. Doc. 25-3, p. 43).

[2] The $15,422 value of the taken tract was calculated by multiplying the number of acres of the taken tract (0.648 acres) by the value per acre ($23,800). (Rec. Doc. 25-3, p. 110).

3

tract as a result of the taking, the McEnery report states:

> ... the subject site has been reduced from 1.014 acres to 0.366 acres. From the standpoint of the subject's appeal for rehabilitation of the improvements, the after status of the tract presents a less appealing picture. ... In the "before," the property enjoyed riverfront access and a large back-yard with numerous mature oak trees. It is our understanding that rights of use for the levee and water-front access are no longer a reality for this tract. With this in mind, the location of the [remaining] property from the standpoint of water-access has been downgraded, which will be reflected in our improved sales comparison approach. It will also result in severance damages (<u>Diminution in Value of Remaining Real Estate</u>) to the property owner.

(Rec. Doc. 25-3, p. 113) (emphasis in original). The report also states:

> In the "after" status of the property, the site now is essentially a non-riverfront parcel now cleared of the formerly existing oak grove. An arborist report performed by James L. Culpepper of Greener Trees, Louisiana, LLC is

>  provided in the Addenda for reference and as additional information pertaining [sic] the trees that were previously in place, prior to the acquisition.

(Rec. Doc. 25-3, p. 39). Additionally, the McEnery report states that its appraisal pertains to real property only, not to non-realty items, and that the Culpepper report uses methodologies comporting with the industry standard for plant appraisals. (Rec. Doc. 25-3, p. 122).

The Culpepper report uses the "Trunk Formula Method" to appraise the four live oak trees themselves, arriving at a figure of $64,370 per tree, or $257,200 total. (Rec. Doc. 25-4, p. 6). This report does not explicitly evaluate the diminution in value of the remaining tract caused by the removal of the trees; it merely evaluates the value of the trees themselves. (Rec. Doc. 25-4, p. 1-6). On March 11, 2014, the government filed this instant motion in limine, seeking to exclude Culpepper's expert testimony.

**PARTIES' ARGUMENTS**

**A. Severance Damages**

The government argues that Culpepper's testimony, which separately values oak trees on the subject property, should be excluded because the property must be valued as a whole, both before and after the taking, according to the "unit rule." The government also contends that under controlling law, severance

5

damages should not be assessed separately from the before-and-after method because the before-and-after method already includes severance damages in the calculation. Therefore, according to the government, the Culpepper report should be excluded because it evaluates the cost of the trees themselves, not the diminution in value of the remaining tract caused by the removal of the trees. The government also argues that in Louisiana, standing timber is a component part of an immovable tract of land, and therefore, the oak trees were already included in the McEnery appraisal of the parent tract prior to the taking. The government therefore contends that adding the value of the trees according to the Culpepper report would amount to double-counting. The government anticipates that Thompson might argue that the McEnery appraisal explicitly excluded the value of the trees. In that case, the government argues that the Culpepper appraisal is still inadmissible because it is impermissible for a fact-finder to arrive at a just compensation figure by adding the value of the land without the trees to the value of the trees themselves.

Thompson maintains that he is owed compensation not only for the market value of the portion of his property that was taken, but also for "severance damages" that account for the diminution in value of the remaining property as a result of the taking – specifically, the removal of the four live oak trees that were situated on the taken property but were very near to Thompson's

house on the remaining property. Thompson claims that those oak trees contributed substantially to the value of the remaining property, and their destruction is therefore recoverable as severance damages. Thompson argues that the methods that Culpepper used to value the trees are proper methods for evaluating severance damages. Additionally, Thompson argues that the McEnery report explicitly incorporated the Culpepper report by reference.

## B. Equitable Estoppel

Thompson argues that the government should be equitably estopped from arguing that Thompson should not be separately compensated for the oak trees. Thompson claims that Rhonda Young, an agent of the government, acknowledged that the trees were compensable in an email to Thompson when she made a settlement offer that included an amount to compensate Thompson for the trees. According to Thompson, the government has intentionally misled him by admitting that the trees are compensable while waiting for Thompson's separate claim for the destruction of the trees to become time-barred, and Thompson argues that this constitutes affirmative misconduct for the purpose of equitable estoppel.

The government maintains that Thompson's argument based on equitable estoppel has no basis in law or fact. First, the government claims that Young's email pertained to settlement negotiations and is thus inadmissible. Second, the government argues that even if Young's email were admissible, it does not

constitute an admission that Thompson is legally entitled to compensation for the trees but merely constitutes a negotiation tool. Additionally, the government argues that estoppel against the government is generally impermissible and has never been successfully used in an eminent domain case.

## DISCUSSION

### A. Severance Damages

In partial taking cases,

> ... the compensation to be awarded includes not only the market value of the part of the tract appropriated, but the damage to the remainder resulting from the taking, embracing, of course, injury due to the use to which the part appropriated is to be devoted.

*U.S. v. 101.88 Acres of Land*, 616 F.2d 762 (5th Cir. 1980) (citing *U.S. v. Grizzard*, 219 U.S. 180, 183 (1911)). Therefore,

> ... the appropriate measure of damages is the difference between the value of the parent tract before the taking and its value after the taking. ... When the property interest taken from a parent tract is merely an easement, the proper measure of damages is still the before-and-after method of valuation, expressed as the difference

> between the market value of the land free of the easement and the market value as burdened with the easement.

*U.S. v. 8.41 Acres of Land*, 680 F.2d 388, 392 (5th Cir. 1982) (citing *U.S. v. Va. Elec. Co.*, 365 U.S. 624, 630-32 (1961)).

The Fifth Circuit has acknowledged that there exist at least two different methods for determining just compensation in partial taking cases, but the Fifth Circuit "requires the exclusive use of the before-and-after method of valuation." *8.41 Acres*, 680 F.2d at 392 n.5. That method "computes damages to be the difference in the value of the entire parent tract before the taking and the value of the portion remaining after the taking." *Id.* This can be accomplished "by subtracting the fair market value of what remains after the taking, from the fair market value of the whole immediately before the taking." *Id.* (internal citations omitted). This method does "take into consideration the loss of the part taken and the 'severance damages' to the remainder of the property left after the taking." *Id.* The Fifth Circuit's "unit rule" requires that the property be valued as a whole, meaning that separate aspects of a parcel of land should not be valued separately. *See U.S. v. 499.472 Acres of Land*, 701 F.2d 545, 549 (5th Cir. 1983). For example:

> ... if the condemned land contains a mineral deposit, ...

9

> it is proper to consider this fact in determining the
> market value of the land as a whole, but it is not
> permissible to determine separately the value of the
> mineral deposit and add this to the value of the land as
> a unit.

*Id.* (internal citations omitted).

Here, Thompson is entitled to just compensation that includes the diminution in value of the remaining tract, or "severance damages." The before-and-after method, the exclusive method of valuation in the Fifth Circuit, takes severance damages into account in the partial taking calculation, whereby the value of the remaining tract after the taking is subtracted from the value of the parent tract before the taking. The McEnery report offers appraisals for both figures. It is true that the McEnery report expressly states that its appraisals pertain to real property only, not to non-realty items. However, under the law, a separate appraisal of the trees themselves is irrelevant; an appraisal should only be concerned with the value of the real property as a whole, which takes into account the value of the trees on the property. The McEnery report accomplishes its purpose by finding that the value of Thompson's parent tract before the taking was $68,000, and the value of the remaining tract after the taking is $42,000, which yields a difference of $26,000. This figure accounts

for the diminution in value of Thompson's remaining tract caused by the loss of the four oak trees surrounding his property. In fact, the report explicitly states that the $26,000 figure includes $15,422 in compensation for the taken tract and $10,578 for the diminution in value of the remaining tract. For these reasons, the Court finds that the Culpepper report's appraisal of the trees themselves is irrelevant and that the report should therefore be excluded.

## B. Equitable Estoppel

The remedy of equitable estoppel is very rarely used against the government, and therefore "the burden that a petitioner must meet is very high." *Robertson-Dewar v. Holder*, 646 F.3d 226, 230 (5th Cir. 2011). For Thompson to establish equitable estoppel against the government, he must "prove affirmative misconduct by the government in addition to the four traditional elements" of equitable estoppel, which are:

> ... (1) that the party to be estopped was aware of the facts, and (2) intended his act or omission to be acted upon; [and] (3) that the party asserting estoppel did not have knowledge of the facts, and (4) reasonably relied on the conduct of the other to his substantial injury.

*Peacock v. U.S.*, 597 F.3d 654, 661 n.3 (5th Cir. 2010) (internal

citations omitted). "Affirmative misconduct requires an affirmative misrepresentation or affirmative concealment of a material fact by the government." *Robertson-Dewar*, 646 F.3d at 229-30 (internal citations omitted). "Although courts have been less than forthcoming in defining what a government official must do to satisfy the affirmative misconduct element of an estoppel defense, the cases support the conclusion that at minimum the official must intentionally or recklessly mislead the estoppel claimant." *United States v. Marine Shale Processors,* 81 F.3d 1329, 1350 (5th Cir.1996). A finding of affirmative misconduct requires "more than mere negligence, delay, inaction, or failure to follow an internal agency guideline." *Mangaroo v. Nelson,* 864 F.2d 1202, 1204–05 (5th Cir. 1989) (internal citations omitted). "Those who deal with the Government are expected to know the law and may not rely on the conduct of Government agents contrary to the law." *Jamal v. Travelers Lloyds of Tex Ins. Co.*, 131 F. Supp. 2d 910, 919 (S.D. Tex. 2001).

Thompson argues that the government engaged in affirmative misconduct in intentionally misleading him by admitting, through Rhonda Young's email, that the trees were compensable while waiting for Thompson's separate claim for the destruction of the trees to become time-barred. The Court finds that Thompson has failed to meet his high burden to show that the government has engaged in affirmative misconduct in this case. Any statements made in this

email were communications regarding a settlement offer and, assuming arguendo that the email is admissible, these statements do not amount to an affirmative misrepresentation by the government that Thompson should be compensated for the value of the trees themselves. Furthermore, Thompson is expected to know the law in the Fifth Circuit, which clearly indicates that he is not entitled to the separate value of the trees, and any alleged statement by a government agent that he was so entitled would not change the law. Therefore, Thompson's claim that the government should be equitably estopped must fail.

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that the government's *Motion to Exclude Testimony Which Violates the Unit Rule and Seeks Non-Compensable Damages* **(Rec. Doc. 25)** is **GRANTED.**

**IT IS FURTHER ORDERED** that the Culpepper report, and any testimony regarding the value of the four live oak trees themselves, are hereby **EXCLUDED.**

New Orleans, Louisiana this 5th day of June, 2014.

_____
CARL J. BARBIER
UNITED STATES DISTRICT JUDGE